IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

KHA XIONG, as Guardian Ad Litem
for PHA YANG (Minor Son),

       Plaintiff,                         No. CIV S-07-0202 DAD

   vs.

MICHAEL J. ASTRUE,             <u>ORDER</u>
Commissioner of Social Security,[1]

       Defendant.
_____/

       This social security action was submitted to the court without oral argument for ruling on plaintiff's motion for summary judgment and defendant's cross-motion for summary judgment. For the reasons explained below, plaintiff's motion is granted, defendant's cross-motion is denied, the decision of the Commissioner of Social Security (Commissioner) is reversed, and the matter is remanded with the direction to grant benefits.

/////

/////

---

[1] On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. Mr. Astrue is substituted as defendant in this suit pursuant to 42 U.S.C. § 405(g) and Fed. R. Civ. P. 25(d)(1).

1

## PROCEDURAL BACKGROUND

On March 25, 2004, plaintiff applied for Supplemental Security Income (SSI) childhood disability benefits under Title XVI of the Social Security Act for her son Pha, who was then nine years old. (Transcript (Tr.) at 44-47.) Plaintiff alleged that Pha was disabled by slow learning, slow function, short temper, hurting himself, headaches, depression, hitting himself in the mouth, and hitting his head against the wall. (Tr. at 76.) The application was denied initially and upon reconsideration. (Tr. at 29-33, 36-40.) On April 12, 2006, an administrative law judge ("ALJ") held a hearing at which both plaintiff and Pha, who were represented by a non-attorney, testified. (Tr. at 41, 193-206.) In a decision dated July 24, 2006, the ALJ determined that Pha was not disabled. (Tr. at 11-21.) The ALJ entered the following findings:

> 1. The claimant was born on July 22, 1994. Therefore, he was a school-age child on March 25, 2004, the date the application was filed, and is currently a school-age child (20 CFR 416.926a(g)(2)).
>
> 2. The claimant has not worked or otherwise engaged in substantial gainful activity at any time relevant to this decision (20 CFR 416.924(b) and 416.972).
>
> 3. The claimant has the following severe combination of impairments: receptive and expressive language deficit, learning disorder NOS, disruptive behavior disorder NOS (20 CFR 416.924(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.924, 416.925 and 416.926).
>
> 5. The claimant does not have an impairment or combination of impairments that functionally equals the listings (20 CFR 416.924(d) and 416.926a).
>
> 6. The claimant has not been disabled, as defined in the Social Security Act, since March 25, 2004, the date the application was filed (20 CFR 416.924(a)).

(Tr. at 14-20.) On November 30, 2006, the Appeals Council denied plaintiff's request for review of the ALJ's hearing decision. (Tr. at 4-7.) Plaintiff sought judicial review pursuant to 42 U.S.C. § 405(g) by filing the complaint in this action on January 30, 2007.

**LEGAL STANDARDS**

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record as a whole and the proper legal standards were applied. Schneider v. Comm'r of Soc. Sec. Admin., 223 F.3d 968, 973 (9th Cir. 2000); Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999). The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. See Miller v. Heckler, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001) (citing Morgan, 169 F.3d at 599); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)).

A reviewing court must consider the record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion. Jones, 760 F.2d at 995. The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence, Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

In determining whether or not a child is disabled for purposes of the SSI program, the ALJ should apply the three-step sequential evaluation process established under Title 20 of the Code of Federal Regulations, § 416.924. This evaluation process was developed after the statutory definition of childhood disability and the standard for determining whether a child is eligible for disability benefits were altered in 1996 by the Personal Responsibility and Work Opportunity Reconciliation Act, Pub. L. No. 104-193, § 211, 110 Stat. 2105 (1996). See Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1013 (9th Cir. 2003) (citing legislative history

indicating that the change in the law was designed so that only needy children with severe disabilities will be eligible for SSI); Jamerson v. Chater, 112 F.3d 1064, 1065, 1067-68 (9th Cir. 1997) (recognizing the more stringent standard imposed by the 1996 legislation).

A child, defined as "[a]n individual under the age of 18," is disabled for purposes of the SSI program if the child "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). The three-step evaluation process requires the ALJ to determine (1) whether the claimant is currently engaged in substantial gainful activity, (2) whether the claimant has a medically determinable impairment or combination of impairments that is severe, and (3) whether the claimant's impairment or combination of impairments meets or medically equals the requirements of a listed impairment, or functionally equals the listings. 20 C.F.R. § 416.924(b)-(d). See Nesmith ex rel. A.S. v. Astrue, No. CV-07-217-CI, 2008 WL 958206, at *2 (E.D. Wash. Apr. 8, 2008); Augustine ex rel. Ramirez v. Astrue, 536 F. Supp. 2d 1147, 1150-51 (C.D. Cal. 2008); Smith v. Massanari, 139 F. Supp. 2d 1128, 1132 (C.D. Cal. 2001). "The claimant bears the burden of establishing a prima facie case of disability." Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995).

**APPLICATION**

Plaintiff seeks summary judgment or remand for a new hearing on the grounds that (1) the ALJ erred in finding that Pha's impairments did not meet or equal Listing 112.02 - Organic Mental Disorders; (2) the ALJ failed to properly evaluate and credit the medical evidence regarding Pha's functional limitations; and (3) the ALJ failed to properly credit the lay testimony and third party statements of Pha's mother as to the nature and impact of Pha's impairments and functional limitations.

Plaintiff's arguments challenge the ALJ's findings at the third step of the three-step evaluation process, i.e., the determination of whether the claimant has an impairment or

combination of impairments that meets, medically equals, or functionally equals a listed impairment. Plaintiff's arguments are addressed below.

### I. The ALJ's Determination that Pha's Impairments Did Not Meet or Medically Equal Listing 112.02

Listing 112.02 describes and sets forth the criteria for organic mental disorders, which comprise one of eleven diagnostic categories of mental disorders in children. See 20 C.F.R. § 404, Subpt. P, App. 1, § 112.00A.[2] The introduction to Listing 112.02 describes organic mental disorders as follows:

> *Organic Mental Disorders:* Abnormalities in perception, cognition, affect, or behavior associated with dysfunction of the brain. The history and physical examination or laboratory tests, including psychological or neuropsychological tests, demonstrate or support the presence of an organic factor judged to be etiologically related to the abnormal mental state and associated deficit or loss of specific cognitive abilities, or affective changes, or loss of previously acquired functional abilities.
>
> The required level of severity for these disorders is met when the requirements in both A and B are satisfied.

Id. at § 112.02.

For each of the eleven diagnostic categories of mental disorders in children, paragraph A criteria describe "a set of medical findings," while paragraph B criteria describe "a set of impairment-related functional limitations." Id. at § 112.00A.

> The purpose of the criteria in paragraph A is to substantiate medically the presence of a particular mental disorder. Specific symptoms and signs under any of the listings 112.02 through 112.12 cannot be considered in isolation from the description of the mental disorder contained at the beginning of each listing category. Impairments should be analyzed or reviewed under the mental category(ies) indicated by the medical findings. . . .

---

[2] Other mental disorders described in the listings are psychotic disorders (112.03); mood disorders (112.04); mental retardation (112.05); anxiety disorders (112.06); somatoform, eating, and tic disorders (112.07); personality disorders (112.08); psychoactive substance dependence disorders (112.09); autistic disorder and other pervasive developmental disorders (112.10); attention deficit hyperactivity disorder (112.11); and developmental and emotional disorders of newborn and younger infants (112.12). 20 C.F.R. § 404, Subpt. P, App. 1, § 112.00A.

> The purpose of the paragraph B criteria is to describe impairment-related functional limitations which are applicable to children. Standardized tests of social or cognitive function and adaptive behavior are frequently available and appropriate for the evaluation of children, and, thus, such tests are included in the paragraph B functional parameters. The functional restrictions in paragraph B must be the result of the mental disorder which is manifested by the medical findings in paragraph A.

Id.

In order to meet Listing 112.02, a claimant must provide evidence of medically documented persistence of at least one of the ten sets of medical findings listed in paragraph A of the listing, and a claimant aged 3 to 18 must provide evidence of at least two of the four functional limitations described in paragraph B of the listing. Id. at § 112.02A & B.

Here, the ALJ determined at step two of the sequential evaluation process that Pha has a severe combination of three impairments. (Tr. at 14.) In making this determination, the ALJ considered the language and speech evaluation report prepared in March 2003 by Sharon Clement, a licensed language, speech, and hearing specialist for the school district's special education division (Ex. 3F, tr. at 110-13); the school district's IEP assessment of Pha in March 2004 (Ex. 4F, tr. at 118-27); the March 2004 report of Pha's 4th grade teacher (Ex. 8F, tr. at 150-57); the psychological evaluation of Pha by consultative examiner Kimberly Stearns, Ph.D., in May 2004 (Ex. 9F, tr. at 158-61); the speech and language evaluation of Pha by Pauline Nash, M.S. CCC-SLP, in June 2004 (Ex. 10F, tr. at 162-64); and Sacramento County Mental Health progress records for Pha for 2005 and 2006 (Ex. 12F, tr. at 174-92). The ALJ found that these medical records demonstrate that Pha has a severe combination of the following impairments: (1) receptive and expressive language deficit, (2) learning disorder (not otherwise specified), and (3) disruptive behavior disorder (not otherwise specified). (Tr. at 14-15.)

Next, the ALJ determined that Pha does not have an impairment or combination of impairments that meets or medically equals a listed impairment. (Tr. at 15.) The ALJ's discussion on this point is quite brief: "The child's cognitive functioning is at least within low

1  average and is not of the severity to satisfy section 112.05 of the childhood listings nor are his
2  other impairments of listing level severity." (Tr. at 15.)  Plaintiff argues that the ALJ failed to
3  actually evaluate whether Pha met any listing, that the ALJ's perfunctory evaluation of Listing
4  112.05-Mental Retardation addressed the wrong listing because there was no allegation made or
5  evidence presented that Pha is mentally retarded, and that Pha's mental impairment clearly met
6  Listing 112.02.
7        As noted supra, "[s]pecific symptoms and signs under any of the listings 112.02
8  through 112.12 cannot be considered in isolation from the description of the mental disorder
9  contained at the beginning of each listing category," and impairments are to be evaluated under
10 mental categories indicated by the medical findings.  § 112.00A.  The description of organic
11 mental disorders provided at the beginning of Listing 112.02 requires that "[t]he history and
12 physical examination or laboratory tests, including psychological or neuropsychological tests,
13 demonstrate or support the presence of an organic factor judged to be etiologically related to the
14 abnormal mental state and associated deficit or loss of specific cognitive abilities, or affective
15 changes, or loss of previously acquired functional abilities."  § 112.02.  Plaintiff has cited no
16 medical findings, either in Pha's history and physical examination or in any of the psychological
17 tests, that demonstrate or support the presence of an organic factor judged to be etiologically
18 related to Pha's abnormal mental state and any associated deficit or loss of specific cognitive
19 abilities, or affective changes, or loss of previously acquired functional abilities.  See § 112.02.
20 Nor has plaintiff shown that the administrative record contains any allegation of an organic factor
21 etiologically related to Pha's mental disorders.
22       In the absence of any allegation of organic mental disorder or any medical
23 findings indicating an organic factor judged to be etiologically related to Pha's abnormal mental
24 state and associated deficits, the ALJ was not required to analyze or review Pha's impairments
25 under § 112.02, the listing for organic mental disorders.  In stating that Pha's level of cognitive
26 functioning did not satisfy § 112.05, the listing for mental retardation, the ALJ appeared to be

responding to plaintiff's claim that Pha was disabled by slow learning and slow function. Plaintiff does not dispute the ALJ's determination with regard to mental retardation, and the court finds that the ALJ properly concluded that none of Pha's other impairments were of listing level severity because the claimant had not established a prima facie case of disability under any of the listings, including § 112.02.  See Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002); Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

## II. The ALJ's Determination that Pha's Impairments Did Not Functionally Equal the Listings

Plaintiff contends that the ALJ also erred in finding that Pha's impairments did not functionally equal the listings. This contention is supported by plaintiff's arguments that the ALJ failed to properly evaluate and credit the medical evidence regarding Pha's functional limitations and that the ALJ also failed to properly credit the lay testimony and third party statements of Pha's mother as to the nature and impact of Pha's impairments and functional limitations.

Even if a child's severe impairment or combination of impairments does not meet or medically equal a listed impairment, the child may still be found disabled if the child's impairments result in limitations that functionally equal the listings. 20 C.F.R. § 416.926a(a). Functional equivalence requires an assessment of what the child cannot do, what the child has difficulty doing, what the child needs help doing, and what the child is restricted from doing because of his or her impairments. Id.  In performing such an assessment, the ALJ must consider the interactive and cumulative effects of all of the child's impairments for which evidence has been submitted, including impairments that have not been found to be severe. Id.  In addition, the ALJ must consider the child's functioning in all activities – at home, at school, and in the community – and determine how appropriately, effectively, and independently the child performs those activities compared to the performance of other children the same age who do not have impairments. 20 C.F.R. § 416.926a(b).

In order to establish that an impairment or combination of impairments is of listing-level severity and therefore functionally equivalent to the listings, the claimant must show that his or her impairment or combination of impairments has resulted in an extreme limitation in one area of functioning or marked limitations in two areas. 20 C.F.R. § 416.926a(a). The regulations identify six "broad areas of functioning intended to capture all of what a child can or cannot do." 20 C.F.R. § 416.926a(b)(1). The six areas, referred to as "domains," are as follows:

(1) Acquiring and using information;
(2) Attending and completing tasks;
(3) Interacting and relating with others;
(4) Moving about and manipulating objects;
(5) Caring for oneself; and
(6) Health and physical well-being.

Id.

A child will be found to have an extreme limitation in a domain when his or her impairments interfere "very seriously" with the ability to independently initiate, sustain, or complete an activity or activities. Id. at § 416.926a(e)(3)(i). An extreme limitation is "more than marked" and is "the equivalent of the functioning [the Commissioner] would expect to find on standardized testing with scores that are at least three standard deviations below the mean." Id. A child will be found to have a marked limitation in a domain when his or her impairments interfere "seriously" with the ability to independently initiate, sustain, or complete an activity or multiple activities. Id. at § 416.926a(e)(2)(i). A marked limitation is "'more than moderate' but 'less than extreme.'" Id. A marked limitation is also "the equivalent of the functioning [the Commissioner] would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean." Id.

In the present case, the ALJ made the following findings regarding Pha's functional limitations: (1) Pha does not have extreme limitation in any domain; (2) Pha has marked limitation only in the domain of acquiring and using information; (3) Pha has less than marked limitation in the domains of attending and completing tasks, interacting and relating with

9

others, and ability to care for himself, and (4) Pha has no limitation in the domains of moving about and manipulating objects, and health and physical well-being. (Tr. at 15-20.) Having determined that Pha did not have an impairment or combination of impairments that resulted in marked limitation in two domains or extreme limitation in one domain, the ALJ concluded that Pha's impairments did not functionally equal the listings. (Tr. at 20.)

Plaintiff argues that the evidence of record clearly documented that Pha was markedly impaired in at least two domains: (1) acquiring and using information and (2) attending and completing tasks. In light of the ALJ's finding of marked limitation in the domain of acquiring and using information, the issue before the court is whether the ALJ erred in finding that Pha's limitation in the domain of attending and completing tasks was less than marked.

The ALJ's discussion of the domain of attending and completing tasks is set forth here in its entirety:

> This domain considers how well the claimant is able to focus and maintain attention, and how well he is able to begin, carry through, and finish activities, including the pace at which he performs activities and the ease of changing activities (20 CFR 416.926a(h)).
>
> The regulations provide that a school-age child without an impairment should be able to focus his attention in a variety of situations in order to follow directions, remember and organize school materials, and complete classroom and homework assignments. The child should be able to concentrate on details and not make careless mistakes in his work (beyond what would be expected in other children of the same age who do not have impairments). The child should be able to change activities or routines without distraction, and stay on task and in place when appropriate. The child should be able to sustain attention well enough to participate in group sports, read by himself, and complete family chores. The child should also be able to complete a transition task (e.g., be ready for the school bus, change clothes after gym, change classrooms) without extra reminders and accommodation (20 CFR 416.926a(h)(2)(iv)).
>
> Social Security regulation 20 CFR 416.926a(h)(3) sets forth examples of limited functioning in this domain. The applicability of any listed example may be dependent on the claimant's age and developmental stage and does not necessarily describe a "marked" or "extreme" limitation. These examples involve a child who: (i) is easily startled, distracted, or overreactive to sounds, sights,

> movements, or touch; (ii) is slow to focus on, or fails to complete activities of interest (e.g., games or art projects); (iii) repeatedly becomes side-tracked from activities or frequently interrupts others; (iv) is easily frustrated and gives up on tasks, including ones he is capable of completing; and (v) requires extra supervision to remain engaged in an activity.
>
> The claimant has less than marked limitation in attending and completing tasks. In this area of functioning, his teacher rated him as having generally "slight" to "an obvious" problem but only in one area as having a "serious" problem: completing work accurately without careless mistakes. He has shown the proficiency to attend and complete his school assignments. He also successfully completed the various psychological and other standardized tests measuring his cognitive and other functioning.

(Tr. at 17.)

Plaintiff asserts that the ALJ (1) improperly rejected Dr. Stearns' opinion that Pha was markedly limited in attending and completing tasks (tr. at 161); (2) failed to appreciate the cumulative effect of the limitations noted by Pha's teacher, including Pha's serious problem completing work accurately without careless mistakes and his obvious problems focusing long enough to finish an assigned activity or task and refocusing to the task when necessary, and working without distracting himself or others (tr at 152); (3) did not consider the April 4, 2006 observations made by Pha's mental health counselor that claimant was not fully focused on what he was doing, that most of the time he could not be directed to stay focused, and that his mind was often shut off or somewhere else (tr. at 182); and (4) failed to consider the findings of the April 2006 mental status examination, which revealed that Pha was unable to concentrate, that his thought processes were fragmented, and that his speech was pressured (tr. at 178). Plaintiff argues that the evidence in the record clearly documented that Pha was markedly impaired in the domain of attending and completing tasks, as well as in the domain of acquiring and using information, thereby establishing that Pha's impairments were functionally equivalent to the listings. The court agrees.

"To reject an uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." Bayliss v.

Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005) (citing Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995)).  The opinion of a non-examining professional, without other evidence, is an insufficient basis for rejecting the opinion of either a treating or an examining professional. Lester, 81 F.3d at 831.

      Here, the ALJ's analysis of the domain of attending and completing tasks fails to mention the opinion of Kimberly Stearns, Ph.D., the licensed psychologist[3] who examined Pha in March 2004.  (Tr. at 158-61.)  In Dr. Stearns' opinion, Pha was markedly limited in the domain of attending and completing tasks, as well as in several other domains.  (Tr. at 161).  Having found marked limitations in the domains of acquiring and using information, attending and completing tasks, and concentration, persistence and pace, Dr. Stearns concluded that Pha was "markedly impaired in his ability to succeed academically due to learning disorder" and that his social and academic functioning was further diminished by this history of a speech/language disorder and disruptive behaviors.  (Id.)

      The ALJ's decision does not cite any medical opinion that contradicts Dr. Stearns' opinion and does not offer a statement of clear and convincing reasons, supported by substantial evidence, for rejecting Dr. Stearns' opinion.  The first reference to Dr. Stearns' report reflects that the ALJ relied on Dr. Stearns' opinion when he found that Pha has a severe combination of three impairments -- the three disorders identified in Dr. Stearns' Axis I diagnosis.  (Compare tr. at 14 with tr. at 160.)  In discussing Pha's impairments, the ALJ cited Dr. Stearns' findings that Pha was "quiet and reserved but easily distracted with below average speech intelligibility and concentration."  (Tr. at 14.)  These findings were based on Dr. Stearns' own observations during her mental status examination of Pha:

> Rapport was difficult to establish.  The claimant was quiet and reserved in demeanor.  Mood appeared mildly anxious and affect was congruent.  Speech intelligibility was below average.

---

[3] Licensed or certified psychologists are acceptable medical sources for information related to disability claims.  20 C.F.R. § 416.913(a)(2).

> Auditory comprehension appeared delayed.  Attention / concentration were impaired.  The claimant was easily distracted by extraneous stimuli.

(Tr. at 159.)

The ALJ's own summary of the medical records includes evidence that supports Dr. Stearns' opinion that Pha was markedly impaired in the domain of attending and completing tasks: (1) school records in 2004 indicating that Pha was prone to runons and incomplete sentences, would rush through his work, and often would not respond to teachers; (2) Sacramento County mental health progress records for 2005 indicating that Pha was distracted; and (3) Sacramento County mental health progress records for 2006 indicated that Pha was "still distracted" and not fully focused.  (Tr. at 14.)

The ALJ's analysis of functional equivalence begins with a summary of the testimony and statements of Pha and his mother and is followed by these remarks concerning opinion evidence:

> As for the opinion evidence, the May 2004 medical source statement from the consulting psychologist cannot be entirely accepted.  The one-time examiner opined that the claimant was markedly impaired in all relevant domains of functioning. Although the record clearly supports marked level of impairment in acquiring and using information that level of impairment is not supported either by the results of the present examination or the record as a whole in the remaining areas cited by the psychologist: attending and completing tasks, interacting with others, caring for himself, communicative development, or in concentration, persistence, or pace (Ex. 9F/4).  Rather, as will be explained below the record shows less than a marked functional impairment in those other areas.

(Tr. at 15-16.)  The court has already set out the ALJ's analysis of the domain of attending and completing tasks but repeats here the brief portion of the analysis that appears to be the ALJ's explanation of how the record shows less than a marked functional impairment in the domain of attending and completing tasks:

> In this area of functioning, [the claimant's] teacher rated him as having generally "slight" to "an obvious" problem but only in one area as having a "serious" problem: completing work accurately

13

> without careless mistakes. He has shown the proficiency to attend and complete his school assignments. He also successfully completed the various psychological and other standardized tests measuring his cognitive and other functioning.

(Tr. at 17.)

The court finds that the ALJ rejected the uncontradicted opinions of the examining psychologist without stating clear and convincing reasons for doing so. Although defendant's counsel suggests various possible reasons for rejecting Dr. Stearns' opinions, plaintiff asserts correctly that the court reviews "only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007) (citing Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003)). Here, Dr. Stearns based her opinions regarding the degree of Pha's functional limitations on her clinical interview with Pha, the mental status examination she conducted, scores on tests she administered, and a review of available records. (Tr. at 158-60.) Cf. Bayliss, 427 F.3d at 1217 (affirming the ALJ's rejection of psychological assessments by doctors who did not review objective medical data or reports from treating physicians or counselors and based their opinions solely on the claimant's complaints and information from family, friends, and a former counselor); Thomas, 278 F.3d at 957 ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.").

Although the ALJ's decision states that "the record" shows less than a marked functional impairment in the domain of attending and completing tasks, the only part of the record cited by the ALJ (tr. at 17) is a questionnaire completed in April 2004 by Ms. Ackermann, Pha's fourth grade teacher (tr. at 150-57). The questionnaire required the teacher to rate Pha in each of the six functional domains on a scale of 1 to 5, with 5 indicating a very serious problem, 4 a serious problem, 3 an obvious problem, 2 a slight problem, and 1 no problem. Notably, this scale does not correspond precisely to the levels described in the relevant regulations: very

serious, serious, and less than serious. See 20 C.F.R. §§ 416.926a(e)(2)(i) & 416.926a(e)(3)(i). However, the questionnaire instructs the person completing it to compare the child's functioning to that of same-aged children who do not have impairments. (Tr. at 150.) If a problem is obvious when a child's functioning is compared to the functioning of same-aged children without impairments, it appears that an obvious problem is a marked limitation for purposes of the regulations, i.e., it is a limitation that interferes seriously with the child's ability to independently initiate, sustain, or complete an activity or multiple activities. See 20 C.F.R. § 416.926a(e)(2)(i).

The questionnaire relied upon by the ALJ lists thirteen activities for the domain of attending and completing tasks. (Tr. at 152.) Ms. Ackermann rated Pha as having no problem in three activities (sustaining attention during play and sports activities, waiting to take his turn, changing from one activity to another without being disruptive) and only a slight problem in five activities (paying attention when spoken to directly, carrying out single-step instructions, organizing his own things or school materials, completing class and homework assignments, working at a reasonable pace and finishing on time). (Id.) Ms. Ackermann rated Pha as having an obvious problem in four activities (focusing long enough to finish assigned activity or task, refocusing to task when necessary, carrying out multi-step instructions, and working without distracting self or others) and a serious problem in completing work accurately without careless mistakes. (Id.) Ms. Ackermann also circled ratings indicating that Pha's problem areas in the domain of attending and completing tasks occur daily or weekly. (Id.) The written comments for this domain reveal that Pha is unable to attend and complete tasks without close supervision:

> Pha tends to do things just to be done without regard to accuracy. He doesn't like to ask for help. . . . He can do a skill, such as subtraction, as long as the aid [sic] is right there supervising. Left alone, he reverts to previous errors.

(Id.)

Upon close examination of the questionnaire, the court finds that Ms. Ackermann's ratings and written comments tend to support rather than contradict Dr. Stearns'

1  opinion that Pha has a marked limitation in the domain of attending and completing tasks.  In any
2  event, the questionnaire does not constitute substantial evidence for rejecting Dr. Stearns'
3  assessment of Pha's functional limitations.  In the absence of clear and convincing reasons
4  supported by substantial evidence, the court finds that the ALJ failed to properly evaluate and
5  credit the medical evidence regarding Pha's functional limitations and improperly rejected Dr.
6  Stearns' opinion with regard Pha's limitation in the domain of attending and completing tasks.

7           The court finds that the ALJ also erred in rejecting the lay testimony and third-
8  party statements of Pha's mother regarding the nature and extent of her son's functional
9  limitations.  Although the ALJ determined that "the claimant's medically determinable
10 impairments could reasonably be expected to produce the alleged symptoms," he concluded that
11 "the statements concerning the intensity, persistence and limiting effects of the claimant's
12 symptoms are not entirely credible."  (Tr. at 15.)

13          It is well established that the determination of credibility is a function of the ALJ
14 acting on behalf of the Commissioner.  Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996).  An
15 ALJ's assessment of credibility should, in general, be given great weight.  Nyman v. Heckler,
16 779 F.2d 528, 531 (9th Cir. 1985).  Thus, questions of credibility and resolution of conflicts in
17 the testimony are usually deemed functions solely of the Commissioner.  Morgan, 169 F.3d at
18 599.  Ordinary techniques of credibility evaluation may be employed, and the ALJ may take into
19 account prior inconsistent statements or a lack of candor by the witness.  Fair v. Bowen, 885 F.2d
20 597, 604 n.5 (9th Cir. 1989).

21          The testimony of lay witnesses, including family members, about their own
22 observations regarding the claimant's impairments is appropriate and must be considered and
23 discussed by the ALJ.  Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006); Smolen
24 v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996); Sprague, 812 F.2d at 1232.  Clearly, family
25 members who see the claimant on a daily basis are competent to testify as to their observations.
26 Regennitter v. Comm'r of Soc. Sec. Admin., 166 F.3d 1294, 1298 (9th Cir. 1999); Dodrill v.

Shalala, 12 F.3d 915, 918-19 (9th Cir. 1993).  If the ALJ chooses to reject or discount the testimony of lay witnesses, he must give reasons that are germane to each witness.  Regennitter, 166 F.3d at 1298; Dodrill, 12 F.3d at 919.

Where, as here, the claimant is a child, the regulations expressly authorize the use of information "from other sources, like parents," to help the Social Security decision maker understand how the claimant's impairments affect his or her abilities.  20 C.F.R. § 416.913(e).  The observations of parents are especially important in childhood disability cases because parents generally interact with the child every day.  20 C.F.R. § 416.924a.

Here, the ALJ summarized the testimony of Pha's mother as follows:

> The child's mother testified that the child has problems with his brain and he is slow and forgetful.  At school he can't remember to follow instructions and is in special education.  He has friends in school, speaks both languages at home, gets along well with the other children but cannot control his anger and will knock his head on the wall and tries to hurt himself, which he does 2 or 3 times a day a few times a week though his teacher has not mention [sic] that he does this in school.  He also urinates in the classroom.  He takes medication for hyperactivity but it doesn't help.

(Tr. at 15.)  Although the ALJ concluded that Pha's medically determinable impairments could reasonably be expected to cause the alleged symptoms, he decided that the statements regarding the intensity, persistence and limiting effects of Pha's symptoms "are not entirely credible."  (Id.)  The ALJ did not support this conclusion with any reason germane to the witness.

In his analysis of the functional domain of attending and completing tasks, the ALJ made no reference to the testimony or statements of Pha's mother.  The ALJ failed to discuss her testimony that her son was hyperactive, was unable to sit in one place, walked back and forth in the classroom without permission, and was seated next to his teacher in order to make it easier for her to control his behavior.  (Tr. at 17, 198.)  The ALJ also overlooked or disregarded the statements of Pha's mother to Dr. Stearns about Pha's failure to complete chores, his difficulty remembering instructions, and his problem with completing multi-step tasks.  (Tr. at 159.)  The final decision of the Commissioner should be reversed on this ground as well.

The ALJ's decision regarding Pha's limitations in the domain of attending and completing tasks is not supported by substantial evidence. If Dr. Stearns' opinions and the testimony and third-party statements of Pha's mother are properly credited, the record contains substantial evidence that Pha had marked limitations in two domains – attending and completing tasks, and acquiring and using information. With marked limitations in two domains, Pha's medically determinable impairments should have been found to be functionally equivalent to the listings, and Pha should have been found disabled.

## CONCLUSION

The decision whether to remand a case for additional evidence or to simply award benefits is within the discretion of the court. Ghokassian v. Shalala, 41 F.3d 1300, 1304 (9th Cir. 1994); Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990). In this regard, the Ninth Circuit has stated that, "[g]enerally, we direct the award of benefits in cases where no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed." Ghokassian, 41 F.3d at 1304 (citing Varney v. Sec'y of Health & Human Servs., 859 F.2d 1396, 1399 (9th Cir. 1988)). This rule recognizes the importance of expediting disability claims. Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001); Ghokassian, 41 F.3d at 1304; Varney, 859 F.2d at 1401.

The record in this case was adequately developed and establishes that Pha had medically determinable mental impairments, which resulted in marked and severe functional limitations, and met the duration requirement. This matter should therefore be remanded with the direction to grant benefits. See Moore v. Comm'r of Soc. Security Admin., 278 F.3d 920, 925 (9th Cir. 2002) (remanding for payment of benefits where the ALJ improperly rejected the testimony of the plaintiff's examining physicians); Ghokassian, 41 F.3d at 1304 (awarding benefits where the ALJ "improperly discounted the opinion of the treating physician").

/////

/////

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (Doc. No. 23) is granted;
2. Defendant's cross-motion for summary judgment (Doc. No. 24) is denied;
3. The decision of the Commissioner is reversed; and
4. This matter is remanded with the direction to grant benefits.

DATED: September 10, 2008.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:kw
Ddad1/orders.socsec/xiong0202.order